**BUDGET CREDITS, INC., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 19028.

United States Court of Appeals
Sixth Circuit.

Oct. 16, 1969.

Miles Jaffe, Detroit, Mich. (Jason L. Honigman, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., on the brief), for appellant.

Ann E. Belanger, Dept. of. Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PECK, McCREE and COMBS, Circuit Judges.

PER CURIAM.

The Commissioner of Internal Revenue assessed income tax deficiencies totalling $100,024.98 against appellant taxpayer for the fiscal years ending July, 1960 through 1963. These deficiencies resulted from the Commissioner's disallowance of certain additions to taxpayer's reserve for bad debts during the years in question. The Tax Court, two judges dissenting, upheld the Commissioner's assessments, and it is from that decision taxpayer appeals.[1]

There is no dispute about the facts, all of which were stipulated. Taxpayer is a wholly-owned subsidiary of Federal's, Inc. Federal's operates a number of retail department stores which sell merchandise consisting of tangible personal property. Sales are made both for cash and on credit, and the credit sales naturally create accounts receivable. During each of the years in question, Federal's sold, without recourse, all of its accounts receivable to taxpayer. This was done to insulate Federal's from the good will problems associated with suits for collection and the rejection of credit.

After acquiring the accounts receivable, taxpayer resold them, without recourse, to a bank under an agreement whereby the bank retained ten percent of the sale price as a reserve and remitted the remaining 90% to taxpayer. If an account receivable was in default, the bank could charge it against the reserve. As a matter of practice, however, taxpayer repurchased from the bank all accounts receivable which went into default. Taxpayer also did the accounting for and collection of the accounts receivable sold to the bank. The acquisition of Federal's accounts receivable and the financing and collection of those accounts were the only business functions engaged in by taxpayer.

In computing its bad debt reserve for the years in question taxpayer included the amounts of outstanding accounts receivable sold to the bank. It is the increases in the bad debt reserve created by this reference to the accounts receivable which the Commissioner disallowed. The sole issue on appeal is whether taxpayer was entitled to increase its bad debt reserve by including in the compu-

---

1. The decision of the Tax Court is reported at 50 T.C. 52 (1968).

tation of that reserve the accounts receivable sold to the bank.

Section 166 of the Internal Revenue Code of 1954, 26 U.S.C. § 166, provides, in pertinent part, as follows:

*Sec. 166. Bad Debts.*

(a) *General Rule.*—

(1) *Wholly worthless debts.*— There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) *Partially worthless debts.*— When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

(b) *Amount of Deduction.*—For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

(c) *Reserve for Bad Debts.*—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) *a deduction for a reasonable addition to a reserve for bad debts.*

\*   \*   \*   \*   \*   \*

(g) *Reserve for Certain Guaranteed Debt Obligations.*—

(1) *Allowance of deduction.*—In the case of a taxpayer who is a *dealer in property,* in lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) for any taxable year ending after October 21, 1965, a deduction—

(A)   for a reasonable addition to a reserve for bad debts which may arise out of his liability as a guarantor, endorser, or indemnitor of *debt obligations arising out of the sale by him of real property or tangible personal property* (including related

services) in the ordinary course of his trade or business; and

(B) for the amount of any reduction in the suspense account required by paragraph (4) (b) (i).

(2) *Deduction disallowed in other cases.*—Except as provided in paragraph (1), no deduction shall be allowed to a taxpayer for any addition to a reserve for bad debts which may arise out of his liability as guarantor, endorser, or indemnitor of debt obligations. (Emphasis added).

The majority in the Tax Court reasoned that:

Subsection (1) of [section 166(g)] requires that the taxpayer-guarantor be "a dealer in property" and that the obligations be those "arising out of the sale by him of real property or tangible personal property." [Emphasis supplied]. Clearly, petitioner does not meet the statutory description. Such being the case, petitioner cannot escape the impact of subsection (2) of section 166(g), which specifically provides that, except to the extent provided in paragraph (1), no deduction shall be allowed for any addition to a bad debt reserve by a taxpayer-guarantor.

Since taxpayer was expressly denied the benefit of section 166(g), the Tax Court concluded that it had no alternative but to uphold the Commissioner's deficiency assessments.

We agree with that decision and, for the reasons expressed therein, we affirm. Despite the business justification for taxpayer's existence as a separate corporate entity, we cannot disregard the apposite exclusionary language of section 166(g) (2).

Moreover, we regard as without merit the contentions that taxpayer and Federal's either were engaged in a joint venture or were, in reality, a single business enterprise. Although taxpayer was a wholly-owned subsidiary of Federal's, the two corporations were valid, separate entities engaged in independent business activities. Federal's operated a chain

of retail department stores and taxpayer purchased and financed accounts receivable. The fact that taxpayer acquired its accounts exclusively from Federal's is not sufficient to convert otherwise separate and independent business activities into a joint venture, or to make the two corporations a single entity.[2]

As the Tax Court observed, "certain tax consequences flow from the separation and the parties must take the bitter with the sweet." The judgment of the Tax Court is affirmed.

---

**2.** Although it is not determinative, we think it is significant that taxpayer and Federal's never filed a partnership return as required by section 6031 of the Internal Revenue Code of 1954, 26 U.S.C. § 6031, for a joint venture.