## Pizzagalli Construction Co., Inc. and Pizzagalli Corporation v. Vermont Department of Taxes

[321 A.2d 437]

No. 235-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 4, 1974

*Gravel, Shea & Wright,* Burlington, for Plaintiffs.

*Kimberly B. Cheney,* Attorney General, and *Georgiana O. Miranda,* Assistant Attorney General, for Defendant.

**Larrow, J.** The Washington County Court, in a proceeding under V.R.C.P. 74, affirmed the findings and conclusions of the Commissioner of Taxes with respect to Vermont sales and use tax assessments against appellants. The questions here presented on appeal are, the parties agree, solely questions of law; the Commissioner's factual findings now stand undisputed, and some of the questions presented below have been waived.

Three general questions are briefed by the appellants. They are:

> 1. The legality of a sales tax assessment levied as to personal property incorporated into buildings constructed for the Burlington and Winooski Housing Authorities under "turnkey" contracts.

> 2. The legality of a sales tax assessment against a parent corporation allegedly charged to a wholly owned subsidiary corporation for equipment usage.

> 3. The legality of an assessment of sales tax on the basis of a purchase price which included payments to a customs broker for handling customs duties, as well as the duties themselves.

A brief recital of the facts is required to outline the scope of the first two issues presented. Pizzagalli Construction Company, Inc., (the Company) is the parent corporation, en-

gaged largely in construction projects. It has two wholly owned subsidiary corporations. Pizzagalli Corporation (the Corporation) is an entity for the performance of non-union contracts. San Remo Realty Corporation is used for property ownership and financing. In the "turnkey" projects here in issue, San Remo contracted with the local public housing authorities to construct, on property owned by San Remo, housing units, and to sell the property on completion to the authorities. The actual construction was done by the appellant corporations. The taxes here in question were assessed as to personal property (*i.e.* materials and the like) incorporated into the buildings.

The second question relates to equipment owned by the Company and used by the Corporation. Involved in this question is the tax assessed upon rentals therefor.

32 V.S.A. § 9743(4) is the basis for appellants' claim as to the building materials. As then in effect, its pertinent portion exempted from the sales and use taxes:

> (4) Sales of building materials and supplies to be used in the construction, reconstruction, alteration, remodeling or repair of (A) any building structure, or other public works owned by or held in trust for the benefit of any governmental body or agency mentioned in paragraphs (1) and (2) of this section and used exclusively for public purposes. . . .

The Commissioner held the housing authorities here involved to be exempt governmental agencies under 32 V.S.A. § 9743(2). This was a holding that the authorities were agencies of the United States, and was error. The error, however, is harmless, because the authorities are agencies of the state, exempt under the preceding sub-section. See 24 V.S.A. Chapter 87.

Appellants claim that under San Remo's contracts with the housing authorities, executed about a year after the sales tax went into effect, they were justified in executing tax exemption certificates as to the building materials, without even seeking a ruling on the question, because the authorities were the "equitable owners" of the properties or, in the alternative, that the properties were "held in trust" for their benefit. Both parties ignore the statutory requirement of exclu-

sive use for public purposes, evidently conceding that the construction process is such a use. We do not, therefore, reach this issue, particularly since in our view the claimed exemption is not applicable in any event.

■■ While exemptions for a public use are not construed with the same degree of strictness as those applicable to property used for gain or profit, they are still construed strictly, and no claim of exemption can be sustained unless within the express letter or necessary scope of the exempting clause. *English Language Center, Inc.* v. *Town of Wallingford,* 132 Vt. 327, 318 A.2d 180 (1974). So viewed, we concur with the Commissioner that the claimed exemption is not applicable.

We recognize that there is authority to the effect that the interest of a vendee under an executory contract of sale is sufficient "ownership" upon which to base an exemption. See *Hibbing* v. *Commissioner,* 217 Minn. 528, 14 N.W.2d 923 (1944). Some cases, seemingly in accord, involve and emphasize the fact that the vendee has taken possession, or that a "beneficial interest", short of legal title, has passed to the vendee. *Ritchie* v. *City of Green Bay,* 215 Wis. 433, 254 N.W. 113 (1934); *S.R.A. Inc.* v. *Minnesota,* 327 U.S. 558 (1946). This case does not involve those elements, and, particularly in their absence, we feel that the better view is that expressed in *People ex rel. McCullough* v. *Logan Square Presbyterian Church,* 249 Ill. 9, 94 N.E. 155 (1911), that to meet the ownership requirement of an exemption properly construed legal title must be in the claimant, and that the interest of a vendee does not qualify.

Our view is strengthened by an examination of the turnkey contract itself. Precious few of the ordinary attributes of ownership are to be found in the vendees. Of the several millions involved, the vendees paid nothing until the buildings were completed and deeded over. Title to the land and improvements remained in the vendor until then. Although paid nothing until completion, the vendor had to furnish a surety bond, and was solely responsible for completing the construction. All risk of loss from fire or other casualty remained in the vendor until conveyance. All water rents, operating charges, current taxes and assessments were the

responsibility of the vendor up to date of conveyance. And the vendee had no right of possession until conveyance of legal title. With liberal construction it would be difficult on this set of facts to say that the vendee was the "owner" within the meaning of the tax exemption statute; with strict construction it becomes virtually impossible.

■ Appellants' claim that the property in question was "held in trust" for the benefit of an exempt entity fares no better when subjected to anything approaching strict construction. True it is that cases from many jurisdictions, including our own, speak of a vendor under a contract of sale of realty as holding title in trust for the vendee until conveyance, particularly where the sales contract is specifically enforceable. See *Troy* v. *Hanifin*, 132 Vt. 76, 315 A.2d 875 (1974), and cases therein cited. Such language is, however, generally descriptive rather than definitive. A contract to convey property does not create a trust, whether or not specifically enforceable. If not specifically enforceable, and construction contracts in general are not, the vendee acquires no interest in the property before conveyance. If specifically enforceable, the vendee acquires an equitable interest but the relation is not a trust. There is no fiduciary relation, and the transaction more closely resembles a mortgage. The vendor has no duty of disclosure, has the right of beneficial enjoyment until conveyance, and may sell subject to his contract. *Barrell* v. *Britton*, 244 Mass. 273, 138 N.E. 579 (1923); *Huebener* v. *Chinn*, 186 Ore. 508, 207 P.2d 1136 (1949); *Burris* v. *Wilmington Trust Co.*, 301 A.2d 277 (Del. Supr. 1972) ; 1 A. Scott, Trusts § 13 (3d ed. 1967); Restatement of Trusts § 13 (1959). The property here in question was not "held in trust" for an exempt entity within the meaning of the exemption statute.

The fact that this tax is probably borne ultimately by the government, through its subsidy agreements, or by the housing authorities themselves, does not impel any contrary result. There is no question of constitutional immunity; the tax is not on the government or the exempt entity, since the tax is part of the construction costs, and their only obligation is to reimburse the contractor, who is not an instrumentality of government. *James* v. *Dravo Contracting Co.*, 302 U.S. 134

(1937); *Alabama* v. *King & Boozer*, 314 U.S. 1, (1941). Nor are there any equities in the present case to impress us. If the sales tax was not included in the contract price, the housing authorities have not been affected; if it was included, as is more likely, there is no contract provision for price reduction or return if it is not collected. In the instant case, a decision favorable to appellants can benefit only them. And any error in their quoted price could have been averted by either a request for departmental ruling or a contract provision dealing with the contingency. Such a clause was used in the contract here to define possible transfer tax liability.

The second type of assessment involved in this appeal is a sales tax assessment arising from equipment rental. Various types of construction equipment were owned by the Company, none by the Corporation. The equipment was used at various times by the Corporation on its projects, and some if it was occasionally rented to third parties. Book allocations are made between the companies, and the Corporation is invoiced for equipment use. Repairs are made by the user when the need arises. The evidence indicated actual money transfer for use of the equipment, with the rentals being invoiced, billed, and paid. The appellants claim this was all for internal purposes to develop job costs.

32 V.S.A. § 9701(6) defines a "sale" for sales tax purposes as "any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor." The transactions described meet that definition; they are at the least a license to use for an agreed consideration. For reasons good or bad, appellants have elected to operate through separate corporate entities. They cannot take the advantages and avoid the disadvantages.

> A corporation ought not to be able to take whatever advantages are gained by maintaining a subsidiary as a separate entity, and at the same time cast aside that entity whenever it becomes a burden.

*Bonnar-Vawter* v. *Johnson*, 157 Me. 380, 388, 173 A.2d 141 (1961). *Accord, Budget Credits, Inc.* v. *Commissioner of*

*Internal Revenue,* 50 T.C. 52 (1968), *aff'd.* 417 F.2d 1108 (6th Cir. 1969).

Appellants point out that subsequent changes in the regulations of the Commissioner (#1. 9701(6)-2, Appendix C) no longer require a tax on equipment rental if its initial purchase was subject to sales tax. It would not be so subject if bought for rental to others during the entire period of its ownership. None of this equipment was so purchased; its purchase would have been subject to sales tax. The Tax Department has not taxed the type of rental in question here since the change in regulation, apparently on the theory that the rentals are "casual" sales within the meaning of 32 V.S.A. § 9741(4). We are not here called upon to decide whether this interpretation is correct; it favors the appellants and they do not question it. We confine ourselves to holding that applicable regulations at the time of the assessment here in question were within the purview of the statute, and the assessment was correctly levied. No claim appears to have been made below that these transactions were casual, and in less frequent rentals to third parties the tax was collected and paid over.

The third question here presented is quickly disposed of. It was not presented at the hearing before the Commissioner, and was not raised at all until appellants filed a memorandum after the hearing. No evidence relating to this claim was offered at the hearing. Since the Commissioner had no fair opportunity to pass judgment on this question, it is not a matter for review. *Heaton Hospital, Inc.* v. *Emrick,* 128 Vt. 405, 264 A.2d 806 (1970); *Kinney* v. *Cloutier,* 125 Vt. 109, 211 A.2d 246 (1965). Appellants' request, informally set forth in their brief for leave to present additional evidence before the Commissioner, does not meet the requirements of 3 V.S.A. § 815(b).

*Judgment affirmed.*