86 N.J. 159 (1981)
430 A.2d 203
495 CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, AN ASSOCIATION CREATED PURSUANT TO P.L. 1968, CH. 129, DEFENDANT-APPELLANT, AND JOHN L. CHMIELEWSKI, DEFENDANT.
The Supreme Court of New Jersey.
Argued December 1, 1980.
Decided May 27, 1981.
*160 Stanley W. Kallmann argued the cause for appellant (Gennet & Kallmann, attorneys).
Michael F. Chazkel argued the cause for respondent (Chazkel & Gast, attorneys).
The opinion of the Court was delivered by PASHMAN, J.
The standard mortgage clause in an insurance policy protects the interest of a mortgagee in the insured real property. This case presents the question whether a standard mortgage clause entitles a mortgagee to recover the full amount of a loss incurred after it acquired title to the insured property by a conveyance from the owner. The trial court held that the insurer is liable only for the amount of the outstanding mortgage debt. The Appellate Division reversed, finding that the mortgagee may recover the full amount of loss, subject to the policy limits and the rights of superior mortgagees. 173 N.J. Super. *161 114 (1980). Having granted the petition for certification of defendant New Jersey Insurance Underwriting Association, 84 N.J. 431 (1980), we now affirm the judgment of the Appellate Division.

I
The trial court decided the question of liability on the basis of stipulated facts. Defendant John L. Chmielewski owned an apartment building in Newark. When he purchased the building, he assumed an existing first mortgage and gave a second mortgage to plaintiff securing a debt of $12,100. Defendant New Jersey Insurance Underwriting Association [Insurance Underwriting] issued to Chmielewski a fire insurance policy with $100,000 coverage on the building. The policy contained a standard mortgage clause naming Mohawk Savings & Loan Association as first mortgagee and plaintiff 495 Corporation as second mortgagee. During the term of the policy, Chmielewski conveyed the property to 495 Corporation in satisfaction of the second mortgage but subject to the first mortgage. Plaintiff took title to the property and recorded the deed, but did not cancel the mortgage or note,[1] nor did it notify Insurance Underwriting of the change in the ownership of the building and in its interest in the property.
After this conveyance to 495 Corporation but during the term of the policy, the building was damaged by a fire and subsequent vandalism. Plaintiff filed a claim for these losses under the insurance policy. When Insurance Underwriting declined to pay, plaintiff instituted this action.
The trial court granted judgment for defendant Insurance Underwriting, limiting its liability to any undischarged mortgage *162 debt owed by Chmielewski. Relying on Whitestone Savings & Loan Association v. Allstate Insurance Co., 28 N.Y.2d 332, 270 N.E.2d 694, 321 N.Y.S.2d 862 (1971), the court reasoned that the conveyance of the property extinguished defendant's obligation to insure plaintiff at the same time as it discharged the mortgage debt.
The Appellate Division reversed the judgment for defendant.[2] It distinguished Whitestone as involving a loss prior to foreclosure and, relying upon Nationwide Mutual Fire Insurance Co. v. Wilborn, 291 Ala. 193, 279 So.2d 460 (1973), held that "where, as here, a mortgagee acquires title to the mortgaged premises by a conveyance from the defaulting mortgagor in lieu of foreclosure, and a fire occurs thereafter, the mortgagee-owner is entitled to be compensated for its loss, to the extent of available insurance moneys after payment has first been made to the superior mortgagee, if there is one."[3] 173 N.J. Super. at 128-29. The court found this result "equitable, realistic and entirely consistent with the intent and purpose of the independent contract between mortgagee and insurer created by the standard mortgage clause." Id. at 128. We agree and, accordingly, affirm.

*163 II
The standard mortgage clause included in defendant Chmielewski's insurance policy is an independent agreement between the insurer and the mortgagee. Power Building & Loan Association v. Ajax Fire Insurance Co., 110 N.J.L. 256, 257 (E & A 1933). Under the agreement, a mortgagee may recover for damages to the insured property regardless of any defenses that the insurer may have against the named insured. The clause provides that:
Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property....
The issue presented in this appeal is whether such a clause affords to a mortgagee coverage for losses occurring after it has acquired title to the property.
The defendant, emphasizing the phrase "as interest may appear under all present or future mortgages upon the property ... in which the [mortgagee] may have an interest as mortgagee," contends that a mortgagee is covered only to the extent that some portion of the mortgage debt remains unpaid. Because an insured's interest in property is fixed at the time of loss, e.g., P.R. DeBellis Enterprises, Inc. v. Lumbermen's Mutual Casualty Co., 77 N.J. 428, 436 (1978), defendant reasons that under the "plain language" of the policy 495 Corporation was no longer covered when the fire occurred because its interest at the time of loss was no longer that of a mortgagee, but that of an owner.
If the standard mortgage clause were written in "plain English," the defendant's invocation of the "plain language" rule would be more apt. As it is, the language of the clause, far *164 from being "clear and unambiguous," as the defendant claims,[4] may fully and accurately be understood only by careful analysis. Rather than seize upon a single phrase, whose meaning is less than certain, we choose to follow the more circumspect approach to contract interpretation laid out by Professor Corbin:
If, after a careful consideration of the words of a contract, in the light of all the relevant circumstances, and of all the tentative rules of interpretation based upon the experience of courts and linguists, a plain and definite meaning is achieved by the court, a meaning actually given by one party as the other party had reason to know, it will not disregard this plain and definite meaning and substitute another that is less convincing. Such a statement may be a mere truism; but it is not likely to lead to cocksure erroneous judgments. [3 Corbin on Contracts § 535 at 19-21 (1960)]
Following this method, we are unable to derive a plain and definite meaning from the language of the standard mortgage clause itself. However, we are convinced that the interpretation offered by the plaintiff is consistent with the contractual language and is supported by the better reasoned precedents in this and other states. Furthermore, this result is dictated by the well-settled doctrine that, where the controlling language in an insurance policy "will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied." Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, 35 N.J. 1, 7 (1961).
The terms of the contract, read as a whole, refute defendant's view of the contract. The mortgage clause explicitly states that a mortgagee's interest in the insurance is not invalidated by foreclosure. This provision must refer to a foreclosure resulting in the purchase of the property by the mortgagee. Employers' Fire Insurance Co. v. Ritter, 112 N.J. Eq. 418, 421 (Ch. 1933); Guardian Savings & Loan Association v. Reserve Insurance Co., 2 Ill. App.3d 77, 79, 276 N.E.2d 109, 111 (1971). If a third party purchased the property at a foreclosure sale, the mortgagee's *165 insurable interest in the property would terminate, since title would pass free of the mortgagee's security interest. See Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 410 (E & A 1938).
Because the standard mortgage clause applies to circumstances where a mortgagee's interest in the property has increased to ownership through purchase at a foreclosure sale, coverage is not limited to the security interest of a mortgagee, as defendant contends, but is necessarily broader. E.g., Employers' Fire Insurance Co. v. Ritter, supra; Nationwide Mutual Fire Insurance Co. v. Wilborn, supra; Guardian Savings & Loan Association v. Reserve Insurance Co., supra; Federal National Mortgage Association v. Great American Insurance Co., 157 Ind. App. 347, 300 N.E.2d 117 (1973); Federal National Mortgage Association v. Ohio Casualty Insurance Co., 46 Mich. App. 587, 208 N.W.2d 573 (1973). The contractual language on which defendant relies only specifies that the protected interest must originate in a mortgage. In view of the standard mortgage clause as a whole, the quoted phrase does not strictly define the kind of insurable interest covered by the clause. The extent of coverage depends on the extent of the mortgagee's interest at the time of loss, not on the continued existence of a mortgage relationship.
It is possible that, when the standard clause was first adopted early in this century, the industry intended that a mortgagee's coverage would cease after it became the owner of the insured property. But if the defendant in this case intended such a cessation of coverage, it was not entitled to rely on the standard clause. As this Court stated in Mazzilli, supra, "in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer." 35 N.J. at 7. These principles are particularly germane to this case.
*166 Decisions in this State, Employers' Fire Insurance Co. v. Ritter, supra, and elsewhere, e.g., Continental Insurance Company of New York v. Rotholz, 222 Ala. 574, 133 So. 587 (1931); Guardian Savings & Loan Association v. Reserve Insurance Co., supra, have long indicated that the precise meaning of the language of the standard clause is uncertain and, moreover, that the clause can be read as insuring any interest that the mortgagee has in the insured property at the time of loss. It must be assumed that, by including the standard clause in its policy, the defendant accepted current judicial interpretations of the clause. If the defendant intended to provide coverage contrary to these interpretations, it should have drafted a new provision that would have removed any uncertainty about the extent of coverage offered.
As the Appellate Division correctly held, 173 N.J. Super. at 127, the amount of recovery should not be limited to the mortgage debt in cases like the present one where loss occurs after acquisition of title. This rule applies without regard to whether the mortgagee obtained title through purchase at a foreclosure sale or a conveyance from the mortgagor. After a mortgagee acquires title to property, its interest increases to that of an owner and as such, is no longer limited to the amount of the mortgage debt. The mortgagee accepts the property in undamaged condition in satisfaction of the mortgage debt; if the property happens to have greater value than the mortgage debt, the mortgagee should be able to retain the benefit gained through the acquisition by receiving insurance proceeds to restore the property to its original condition.
This result is not unfair to the insurer. Under the mortgage clause the insurer can be liable up to the full insured value of the property if the mortgagee makes additional loans to the owner. As far as the amount of recovery is concerned, it should make little difference to the insurer whether the mortgagee's increased interest is a result of additional loans or acquisition of the property. Moreover, if recovery were limited to the mortgage debt when loss occurs after acquisition by a mortgagee, the *167 insurer would reap a windfall. Although premiums have been paid to protect against the full amount of loss, there would be no one to whom the insurer could pay the amount of loss in excess of the mortgage debt since the previous owner no longer would have an insurable interest in the property.
Plaintiff's ownership of the property in this case originated in a second mortgage given by defendant Chmielewski. Although plaintiff acquired title to the property by conveyance from the mortgagor instead of purchase at a judicial sale, its interest at the time of loss was identical to the interest a mortgagee acquires through foreclosure. This ownership interest is covered by the standard mortgage clause. Therefore, plaintiff may recover for the losses incurred after it acquired title without regard to either the amount of the loan secured by the property or the amount of outstanding debt owed by the mortgagor at the time of acquisition.
The trial court below erred by relying on cases involving an acquisition after loss, where a different result is appropriate. When a mortgagee has acquired property after a loss, its recovery is limited to the amount of deficiency after the acquisition. E.g., Power Building & Loan Association v. Ajax Fire Insurance Co., supra, 110 N.J.L. at 258; Whitestone Savings & Loan Association v. Allstate Insurance Co., supra. If the property was acquired in full satisfaction of the debt, then the mortgagee is not entitled to any of the insurance proceeds.
This rule is consistent with the analysis applied above to losses after acquisition. If a mortgagee had only a security interest in the property at the time of loss, it is entitled to recover no more than the amount of unsatisfied debt at that time, when its interests were fixed for purposes of insurance compensation. See P.R. DeBellis Enterprises, Inc. v. Lumbermen's Mutual Casualty Co., supra. If, subsequent to the loss, part or all of the mortgage debt is paid, the mortgagee's recovery will be reduced by that amount. If the mortgagee acquires title to the property in full or partial satisfaction of the debt, it is accepting the *168 damaged property as payment. Since the mortgagee is not entitled to recover twice for the same debt, Whitestone Savings & Loan Association, supra, 28 N.Y.2d at 335, 270 N.E.2d at 696, 331 N.Y.S.2d at 864, it would be improper to pay the mortgagee the insurance proceeds in addition to the property it has already received. Therefore, the proceeds should be paid to the owner at the time of loss, who presumably received less credit against his mortgage debt because the property was damaged when the mortgagee acquired it.
Another issue we must address is whether plaintiff is ineligible to receive payment under the mortgage clause because it failed to notify defendant of the change of ownership after acquiring title. The contract provides
that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise the policy shall be null and void.
We do not believe that the notification provision requires a mortgagee who acquires title to the insured property to notify the insurer of this fact, unless there is also an increased hazard. Acquisition of the property by the mortgagee is not the kind of change of ownership contemplated by the provision. It is only an increase in the interest of the mortgagee. Federal National Mortgage Association v. Great American Insurance Co., supra, 157 Ind. App. at 349, 300 N.E.2d at 119; Consolidated Mortgage Corp. v. American Security Insurance Co., 69 Mich. App. 251, 256, 244 N.W.2d 434, 437 (1976). Furthermore, the reason for notification is inapplicable when the mortgagee acquires the property. The insurer is already familiar with the mortgagee because they have a contract. Therefore, acquisition by the mortgagee in itself does not increase the risks for the insurer in any way that the parties did not originally contemplate. See Guardian Savings & Loan Association v. Reserve Insurance Co., supra, 2 Ill. App.3d at 79, 276 N.E.2d at 111 (1971); Equitable Life Assurance Society v. Great Atlantic Insurance Co., 69 Misc.2d *169 714, 330 N.Y.S.2d 840 (Sup.Ct.), aff'd, 40 A.D.2d 956, 337 N.Y.S.2d 983 (1972). Since the stipulated facts in this case do not charge plaintiff with knowledge of an increased hazard, its failure to notify defendant does not prevent recovery.

III
We hold, therefore, that a mortgagee acquiring title to property is entitled under the standard mortgage clause to receive insurance proceeds for the full amount of any loss occurring after it acquired title, subject only to the policy limit and the rights of superior mortgagees.
Accordingly, the judgment of the Appellate Division is affirmed and the case is remanded to the trial court for a determination of the amount due plaintiff.
CLIFFORD, J., concurring in result.
My misgivings about the conclusion that plaintiff is entitled to coverage spring from an uneasy feeling that we are interpreting the contract contrary to the intent of the mortgage clause, contrary to the reasonable interpretation of that clause, and contrary to both common sense and insurance sense. Although that kind of strong medicine ordinarily would be enough to prompt one to dissent, for reasons that will appear I join in the majority's result.
Defendant New Jersey Underwriting Association issued a policy of insurance that contained three contractual undertakings: one with John Chmielewski as owner of the apartment building covered by the policy; a second with Mohawk Savings & Loan Association, holder of a first mortgage on the property; and a third with plaintiff, 495 Corporation, the second mortgagee. During the policy period Chmielewski conveyed the property to 495 Corporation in satisfaction of the second mortgage  for our purposes, a "functional" foreclosure. 495 Corporation was thereupon made whole and Chmielewski became entitled to the return of any unearned portion of the premium he had paid. *170 Thereafter the insured premises suffered damage from fire and vandalism. The insurer paid the first mortgagee, Mohawk Savings & Loan Association. The question is whether under the circumstances 495 Corporation, owner of the building when the fire and vandalism damage occurred, is entitled to any of the proceeds of the insurance policy. The answer can be found only in the terms of the contract of insurance.
The insurer's contract was with 495 Corporation only as to the latter's interest as mortgagee. It was named as a "mortgagee," along with Mohawk Savings & Loan Association, on the first page of the policy, which also bore Chmielewski's name as the "insured." The policy called for payment to plaintiff only as its "interest may appear under all present or future mortgages * * upon the property * * * in which the [mortgagee] may have an interest as mortgagee * * *." (emphasis added). When 495 Corporation took back the property, with no part of the mortgage debt remaining undischarged, it became the owner. It was no longer a mortgagee. As I read the policy, 495 Corporation's interest under the policy in question was at an end. Had it wished to protect its interest as owner, it had simply to acquire a policy as owner  either by the transfer of the policy in question to 495 Corporation as owner and payment of the owner's premium therefor, or by obtaining a new policy to protect its ownership interest and that of Mohawk Savings & Loan Association as mortgagee. It did neither.
However, the mortgage clause provided further that "this insurance, as to the interest of the mortgagee * * * only therein, shall not be invalidated by * * * any foreclosure or other proceedings * * * nor by any change in the title or ownership of the property." This clause does not strike me as unclear on its face. As I read it, its apparent intent is to produce the very result achieved by the insurer after the fire in this case, namely, to protect and continue the insurable interest of the first mortgagee, Mohawk Savings & Loan Association, after 495 Corporation's *171 foreclosure. Nevertheless, this reading of the clause has not received universal approval; in fact, there is ample, longs-tanding case law to the contrary. That is the rub. Justice Pashman puts his finger right on the critical point  at least critical enough to sway my vote  when he points out, ante at 166:
Decisions in this State and elsewhere have long indicated that the precise meaning of the language of the standard clause is uncertain and, moreover, that the clause can be read as insuring any interest that the mortgagee has in the insured property at the time of loss. By including the standard clause in its policy, it must be assumed that the defendant accepted current judicial interpretations of the clause. If the defendant intended to provide coverage contrary to these interpretations, it should have drafted a new provision that would have removed any uncertainty about the extent of coverage offered. [Citations omitted.]
Precisely. The insurance industry is not, after all, in the position of Ethelred the Unready. One may reasonably assume that it has available perceptive and competent counsel aware of judicial decisions interpreting its standard policy, sensitive to the need to mold that policy to those decisions, and skilled in the craft of explicit expression. In view of the insurer's failure to accommodate its policy to the realities of judicial interpretation, I would let the industry bear the consequences of what the courts, including New Jersey courts, have said its policy means  not because I think that that reading of the policy makes a lot of sense, but because the insurer has chosen to ignore the abundant notice given it as to how its policy would be interpreted. Hence I vote to affirm.
CLIFFORD, J., concurring in the result.
For affirmance  Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK  6.
For reversal  none.
NOTES
[1] Plaintiff contends that Chmielewski also agreed to pay $2,000 in satisfaction of the mortgage. Since both defendants disputed this obligation, there was no stipulation concerning whether the mortgage was entirely satisfied by the deed. This factual dispute is not important to the present appeal because the issue is Insurance Underwriting's liability above the mortgage debt.
[2] References to "defendant" hereinafter mean Insurance Underwriting unless otherwise noted. Defendant Chmielewski has not participated in this appeal.

The appeal is interlocutory because the trial judge left for future determination the issue whether defendant Chmielewski owed 495 Corp. $2,000 on the mortgage debt and thus whether plaintiff was entitled to recover that amount under the insurance policy. Nevertheless, the Appellate Division granted leave to appeal. 173 N.J. Super. at 116-17 n. 1.
[3] Although the Appellate Division assumed throughout its opinion that the deed was given to avoid foreclosure, there was no stipulation concerning the motive for the conveyance. The fact that the conveyance may not have been a deed in lieu of foreclosure does not affect our decision.
[4] This description is belied by even a cursory review of the conflicting judicial interpretations of the standard clause over the years. See, e.g., 5A J. Appleman, Insurance Law and Practice, § 3403 at 300-04 nn. 62-73 (1970 & 1980 Supp.).