**VERMONT INVESTMENT CAPITAL, INC., (SBA, Receiver)**

v.

**GRANITE MUTUAL INS. CO.**

**Civ. A. No. 88–152.**

United States District Court, D. Vermont.

Feb. 8, 1989.

Patti R. Page, McNeil, Murray & Sorrell, Burlington, Vt., for plaintiff.

Robert V. Simpson, Jr., Richard Davis Associates, Barre, Vt., for defendant.

**1020**

OPINION AND ORDER

BILLINGS, Chief Judge.

On April 1, 1986, Joseph Flanagan telephoned the Bouffard Insurance Agency in St. Johnsbury, Vermont to obtain a fire insurance policy covering premises in Lunenberg, Vermont. Flanagan was to purchase the property from Vermont Investment Capital ("VIC") the next day. Pursuant to a purchase and sale agreement between the parties, VIC was to obtain a purchase money mortgage from Flanagan at the closing in the amount of $86,000 and Flanagan was to obtain insurance naming VIC as mortgagee. At about 9:00 a.m. the following morning, the policy was delivered to Flanagan. Sometime before the scheduled afternoon closing on the property, the house burnt to the ground. The closing did not take place.

The day after the fire, on April 3, 1986, Flanagan phoned the insurance agency to request that the policy be cancelled and to have the check he had written to cover the first premium returned to him. Apparently, Flanagan never returned the policy to the agent and the check was neither returned to Flanagan nor presented for payment. Nonetheless, the agent purported to cancel the policy at that time.

The policy states that it is effective as of 12:01 a.m. on April 2, 1986, and contains a "standard" or "union" mortgage clause naming VIC as mortgagee.[1] VIC made a written claim on the policy which was initially denied by Granite Mutual on the ground that VIC did not have an insurable interest. The Small Business Administration, as receiver, filed suit on behalf of VIC seeking both a declaratory judgment that defendant is liable to it under the policy, and damages. Since the material facts were not in genuine dispute, both sides moved for summary judgment. Hearing was held on January 11, 1989, after which both parties submitted supplemental memoranda.

In its memoranda, and at oral argument, defendant now admits that VIC did have an insurable interest. Defendant argues, however, that VIC failed to insure whatever interest it had. VIC contends that it had insured its interest as of 12:01 a.m. on April 1, 1986, by virtue of the fact that defendant had issued a policy effective at that time with full knowledge that VIC was an owner under contract to sell, whose interest would become that of mortgagee at the time of closing. Alternatively, VIC argues that it was specifically covered under the policy because the mortgage clause explicitly defined "mortgagee" to include "trustee" and VIC was a "trustee" under some uses of the term, particularly under the doctrine of equitable conversion. Defendant counters that VIC was never a mortgagee in any sense of the word because the mortgage relationship was never consummated due to the cancelled closing. It argues that neither Flanagan nor the

---

1. The mortgage clause reads in full as follows:
   15. Mortgage Clause
   The word "mortgagee" includes trustee.
   If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.
   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:
   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. pays any premium due under this policy on demand if you have neglected to pay the premium;
   c. submits a signed, sworn statement of loss within 60 days after receiving notice from

us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
   If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.
   If we pay the mortgagee for any loss and deny payment to you:
   a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
   Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

insurance agent intended to insure the property prior to the closing, and that Vermont law does not support VIC's claim as a trustee.

## DISCUSSION

Summary judgment may be granted only if the moving party can show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). In its current posture, this case is particularly appropriate for resolution on summary judgment. No material facts are disputed; rather, disposition rides solely on the interpretation of the insurance policy issued to Flanagan.

*Insurable Interest*

■ As a preliminary matter, the Court agrees that VIC had an insurance interest at the time of the loss. It was the owner of the property under a contract to sell that placed the risk of loss on the seller prior to closing. VIC clearly could insure that risk; the question is whether it did. While it is true that Flanagan lacked an insurable interest at the time of loss, that fact alone would not preclude VIC's recovery. *Smith v. Union Ins. Co.*, 25 R.I. 260, 55 A. 715 (1903); 43 Am.Jur.2d *Insurance* § 940 at 965.

*Effect of Flanagan's Cancellation*

In addition, we agree with the parties statements at argument that Flanagan's purported cancellation of the policy has no effect on the outcome here. The "standard" or "union" mortgage clause creates an independent contract of insurance between the insurer and the mortgagee. *United States v. Commercial Union Ins. Cos.*, 821 F.2d 164, 166 (2d Cir.1987) (interpreting Vermont law); 43 Am.Jur.2d *Insurance* § 1045 at 1046. The purpose of the clause is to protect the mortgagee's interest from any act or omission of the mortgagor that might prevent the mortgagor's recovery. *Commercial Union*, 821 F.2d at 166; *Christopher & John, Inc. v. Maryland Casualty Co.*, 484 F.Supp. 609, 611 (S.D.N.Y.1980); 43 Am.Jur.2d *Insurance* § 1046 at 1048–51. Thus, the clause

provides that denial of a claim to the insured shall not apply to a valid claim by the mortgagee if, *inter alia*, the mortgagee "pays any premium due under the policy on demand." Further, the mortgagee is entitled to at least ten days notice before the policy can be cancelled.

■ Here, it is undisputed that VIC did not receive the requisite notice of cancellation, nor was it given opportunity to pay the premium due. Thus, VIC's interest in the policy, if any, can not be avoided by Granite Mutual on account of Flanagan's unilateral act of cancellation. In any event, Flanagan purported to cancel the policy *after* the loss. If the policy was effective at the time of the fire, Flanagan's later cancellation would not affect a valid interest in the policy at the time of the loss.

To determine whether VIC's interest in the property was insured at the time of loss, we must first determine whether the insurance policy was in effect prior to the closing. Second, we must determine whether VIC was a mortgagee within the meaning of the policy.

*Effective Time of Policy*

■ The first question would seem to be answered by the policy itself. It states that it is effective as of 12:01 a.m. on April 2, 1986, and thus by its terms was effective at the time of loss. Granite Mutual argues that the parties did not intend the policy to be effective until the scheduled afternoon closing. Notwithstanding that possibility, however, we believe that the parol evidence rule bars extrinsic evidence concerning the effective time of the policy.

The parol evidence rule aims to ensure some measure of stability in commercial relations by preventing one party " 'to substitute his view of his obligations for those clearly stated.' " *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26–27 (2d Cir.1988) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)). Unless a contract term is ambiguous, in which case extrinsic evidence may be received for the purpose of *interpretation, see, e.g., Garza*, 861 F.2d at 27, evidence of prior under-

standings or negotiations may not be received "for the purpose of varying or contradicting the writing." 3A Corbin, *Contracts*, § 573, at 357 (1960).

The parol evidence rule is operative in Vermont in the context of insurance contracts. *Williams Mfg. Co. v. Insurance Co. of North America*, 95 Vt. 134, 135, 113 A. 781 (1921). In this case, were we to entertain extrinsic evidence regarding the effective time of the policy, we would vary an unambiguous term in an integrated contract. "12:01 A.M. Standard Time at the described location" is simply not capable of more than a single meaning "viewed objectively by a reasonably intelligent person." *See Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987). Had the parties wanted the policy to become effective at some other time, they could have said so in the policy. Thus, we conclude that the policy was effective at the time of the loss and turn to the question whether VIC was a "mortgagee" within the meaning of the policy.

*VIC as "Mortgagee"*

Defendant is correct that VIC was not a "true" mortgagee at the time of the loss. Closing had not occurred and no mortgage deed was exchanged. The mortgage relationship between the parties never came into existence. Nonetheless, by including the "standard" or "union" mortgage clause in its policy, Granite Mutual must impliedly accept current judicial interpretations of the clause, refined over nearly a century of the clause's use in similar policies. "If the defendant intended to provide coverage contrary to these interpretations, it should have drafted a new provision that would have removed any uncertainty about the extent of coverage offered." *495 Corp. v. New Jersey Underwriting Ass'n*, 86 N.J. 159, 430 A.2d 203, 207 (1981).

In the *495 Corp.* case, the New Jersey Supreme Court found that the standard mortgage clause was far from clear and unambiguous. It was unable, after "careful analysis," to derive a plain and definite meaning of the clause or of the term "mortgagee". Relying on authority from New Jersey and other states, the court concluded that the standard mortgage clause entitled the mortgagee to recover for a loss after it acquired title to the insured property by conveyance from the owner. "The extent of coverage depends on the extent of the mortgagee's interest at the time of loss, not on the continued existence of a mortgage relationship." *Id.* The Court continued, "[T]he clause can be read as insuring any interest that the mortgagee has in the insured property at the time of loss." *Id.*

Of course, in *495 Corp.* the question was whether the mortgagee could recover *after* the termination of the mortgage relationship. Here, the question is whether the mortgagee can recover *before* the mortgage relationship came into being, and thus the question is whether VIC ever was a "mortgagee" at all. In this regard, some courts have stated that the standard mortgage clause does not provide recovery only while the mortgagee occupies that "precise status." Rather, the term "mortgagee" is "construed as a shorthand method of referring to the party whose interest is thus protected, in the same manner as throughout this opinion we have referred to the Federal National Mortgage Association as FNMA." *Federal Nat's Mortgage Ass'n v. Ohio Casualty Ins. Co.*, 46 Mich.App. 587, 208 N.W.2d 573, 575 (1973) *leave to appeal denied*, 390 Mich. 762 (mortgagee's purchase at foreclosure sale did not extinguish rights under policy); *see also* Annotation, 19 A.L.R.4th 778 (1987) (collecting cases allowing mortgagee to recover after acquiring title to property).

The expansive judicial interpretations of the term "mortgagee" in the standard mortgage clause lend some support to plaintiff's contention that VIC should be considered a "mortgagee" even though it never attained that precise status. In addition, some authorities have likened the relation of a vendor and purchaser of realty to that of a mortgage during the period the contract remains executory. *See Fancher v. Carson–Campbell, Inc.*, 216 Kan. 141, 145, 530 P.2d 1225, 1229 (1975) (quoting 5 *Williston on Contracts*, § 792 (3d Ed. 1961) (stating that analogy, though often

made, "seems inaccurate")); *see also Pizzagalli Construction Co. v. Department of Taxes*, 132 Vt. 496, 500, 321 A.2d 437 (1974) ("the transaction ... closely resembles a mortgage"). Nonetheless, we have found no authority that directly supports the recovery as "mortgagee" of a person in VIC's position.

■ In light of the presumption in favor of coverage in disputes over the meaning of an insurance policy, *see Stonewall Ins. Co. v. Moorby*, 130 Vt. 562, 566, 298 A.2d 826 (1972), and the fact that defendant issued the policy with full knowledge of VIC's role in the transaction, we might be tempted to characterize VIC as a "mortgagee" as meant by the clause.[2] But we need not rest our decision on this theory alone. The clause explicitly defines "mortgagee" to include "trustee", and we think that VIC was a trustee within the meaning of the clause.

*VIC as "Trustee"*

Neither the parties' diligent preparation nor the Court's own research could turn up more than a scant number of cases regarding the meaning or intent of the term "trustee" in the standard mortgage clause. Indeed, despite the plethora of cases discussing one or another aspect of the standard clause, there appears to be no reported cases truly on all fours with the case at bar.

The word "trustee" is probably inserted in the mortgage clause to cover the situation in states where deeds of trust are recognized and such deed is deposited with a trustee as security for purchase of realty. *See Fancher*, 216 Kan. at 146, 530 P.2d at 1229; *Mississippi Lofts, Inc. v. Lexington Ins. Co.*, 653 F.Supp. 345 (E.D.Mo.1986). The same standard printed form may be

used in many jurisdictions. However, when the same language is used in a state where deeds of trust are not recognized, we are hesitant to regard it as superfluous. *See Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) (an interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"). Rather, we agree with the Kansas court that the term "trustee" must be reasonably construed in the context of the law of the state applicable to the policy. *Fancher*, 216 Kan. at 146, 530 P.2d at 1229–30. That law is the law of Vermont, and although Vermont does not currently recognize deeds of trust as security instruments in real estate transactions, we think it does support a characterization of VIC as trustee.

Under the doctrine of equitable conversion, a written contract for the sale of realty effects a transfer of equitable interest in the property to the vendee upon execution. During the executory period of the contract, the vendor holds title "in trust for" the purchaser, "whom equity regards as the owner." *Troy v. Hanifin*, 132 Vt. 76, 81, 315 A.2d 875 (1974); *accord Baker v. Rushford and Rushford*, 91 Vt. 495, 101 A. 769 (1917). We do not think that *Pizzagalli*, 132 Vt. at 500, 321 A.2d 437, is to the contrary. The Court in *Pizzagalli* recognized that "cases from many jurisdictions, including our own, speak of a vendor under contract of sale of realty as holding title in trust for the vendee until conveyance". *Id.* The court went on to note that such language is generally "descriptive rather than definitive", holding that for the purposes of construing a tax exemption statute, a vendor did not hold the property "in trust" for

---

**2.** In this regard, we note the comments of Justice Clifford of the New Jersey Supreme Court: The insurance industry is not, after all, in the position of Ethelred the Unready. One may reasonably assume that it has available perceptive and competent counsel aware of judicial decisions interpreting its standard policy, sensitive to the need to mold that policy to those decisions, and skilled in the craft of explicit expression. In view of the insurer's failure to accommodate its policy to the reali-

ties of judicial interpretation, I would let the industry bear the consequences of what the courts ... have said its policy means—not because I think that that reading of the policy makes a lot of sense, but because the insurer has chosen to ignore the abundant notice given it as to how its policy would be interpreted.
*495 Corp. v. New Jersey Ins. Underwriting Ass'n.*, 430 A.2d at 209–10 (1981) (concurring opinion).

**1024**

an exempt entity. Such construction, of course, made sense in the tax context because exemptions are strictly construed in favor of the taxing authority. *See English Language Center, Inc. v. Town of Wallingford,* 132 Vt. 327, 329, 318 A.2d 180 (1974).

In the insurance context, by contrast, the presumption is in favor of coverage, *Stonewall Ins. Co.,* 130 Vt. at 566, 298 A.2d 826, and it is axiomatic that the identification or characterization of ownership interests for purposes of taxation need not coincide with such identification or characterization for other purposes. Indeed, given the canon of liberal construction operative here, the *Pizzagalli* case supports plaintiff's claim as "trustee" because that case recognized the frequent usage of the terms "trustee" or "in trust" in like situations. The defendant must be charged with knowledge of such usage when it drafts and continues to use the term "trustee" in its policies in this state. *See 495 Corp.,* 430 A.2d at 207; *see also* note 2 *supra.* At the very least, since VIC would be regarded a "trustee" for some purposes, the use of the term in the policy creates an ambiguity that should be construed against the drafter. *Stonewall Ins. Co.,* 130 Vt. at 566, 298 A.2d 826. As such, we hold that plaintiff was covered as a "trustee" under this standard mortgage clause.

## CONCLUSION

The clerk is instructed to enter declaratory judgment that defendant is liable to plaintiff under the terms of its policy No. D36893 for loss occasioned by the fire occurring on April 2, 1986. Plaintiff's prayer for damages and costs is DENIED.

SO ORDERED.