**In re Darlene SANNER dba, Arizona Quality Granite, Debtor**

**David BIRDSELL, Plaintiff,**

**v.**

**FORT McDOWELL SAND AND GRAVEL (an enterprise of the Fort McDowell Mohave–Apache Indian Community), Madison Granite Company, a Novak family liability company, John Kirk, Jane Doe Kirk, Stan Novak, Susan Rose Novak and Law Firms 1–10 and John Does 1–10 and Jane Roes 1–10., Defendants.**

Bankruptcy No. B–91–07694–PHX–CGC.
Adversary No. 97–184.

United States Bankruptcy Court, D. Arizona.

Feb. 25, 1998.

Granite Company and the Novaks ("Defendants") under the collusive bidding provision of 11 U.S.C. § 363(n). Trustee further requests consequential damages of $125,000 plus attorneys' fees and costs and punitive damages of $185,000. Defendants object, arguing there was no agreement in effect at the time of the bidding in order to implicate § 363(n). In turn, Defendants seek summary judgment dismissing Stan Novak on the ground that he cannot be held personally liable under Arizona law. For the following reasons, this Court denies Trustee's motion and grants Defendants' motion regarding Stan Novak's personal liability.

## II. FACTS

The following facts are undisputed. The real property of Debtor Arizona Quality Granite was set for auction on several occasions. At the first auction on July 19, 1993, Fort McDowell Sand and Gravel ("Fort McDowell") was the high bidder at $613,500. The sale did not close, however, due in part to environmental concerns discovered during closing. At a subsequent auction on May 9, 1994, Sun State Rock & Materials was the high bidder at $586,000, but this sale also failed to close for financial reasons. Defendant Madison Granite Company had bid $585,000. On March 27, 1995, Fort McDowell, the sole bidder, bought the property for $275,000.

The remaining facts are in dispute. Trustee alleges that Defendants entered into an agreement with Fort McDowell on March 27, 1995, the day of the sale, in an attempt to control the bidding on Debtor's property. The pertinent portions of the agreement are as follows:

> THIS AGREEMENT made and entered into this 27th day of March, 1995, by and between FORT McDOWELL SAND AND GRAVEL ... and MADISON GRANITE COMPANY, a Novak Family limited liability company acting by and through Stan Novak, Managing Partner.
>
> \* \* \* \* \* \*
>
> WHEREAS, Fort McDowell Sand and Gravel and Madison Gravel Company are now desirous in joining forces and entering

Gerald L. Shelley, Benjamin R. Norris, Quarles & Brady, Phoenix, AZ, for David A. Birdsell, Trustee.

Michael R. Rooney, Scott B. Cohen, Sacks Tierney P.A., Phoenix, AZ, for Madison Granite Company and Stan Novak.

Marian Smoker, Phoenix, AZ, for Sand and Gravel.

Eric M. Casper, Walker Ellsworth, P.L.C., Phoenix, AZ, for John Kirk.

**ORDER RE: TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AGAINST MADISON GRANITE COMPANY AND THE NOVAKS AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

CHARLES G. CASE, II, Bankruptcy Judge.

### (Under Advisement Ruling)

## I. Introduction

Trustee David A. Birdsell ("Trustee") seeks summary judgment against Madison

into a new corporation which would be owned fifty (50%) percent by Fort McDowell Sand and Gravel and fifty (50%) percent by Madison Granite Company.

NOW, THEREFORE, in consideration of the mutual convenants and agreements hereinafter set forth, the parties agree as follows:

1. Madison Granite Company will not enter a bid at the above referenced Trustee's Sale and Fort McDowell Sand and Gravel will enter a bid in the amount of TWO HUNDRED AND SEVENTY–FIVE THOUSAND AND NO/100 ($275,000) DOLLARS, and in the event Fort McDowell Sand and Gravel is successful in obtaining ownership of the Sanner Gravel Pit. Then and in that event, the parties agree as follows:

2. Within thirty (30) days of March 27, 1995, the parties will work together to come to a mutually satisfactory agreement to form a new corporation to be owned fifty (50%) percent by Fort McDowell Sand and Gravel and fifty (50%) percent by Madison Granite Company....

3. In the event the parties are unable to come to a mutually satisfactory agreement on the formation of a new company, the management responsibilities, and the split of profits, then and in that event, Fort McDowell Sand and Gravel agrees to sell its interest in the Sanner Gravel Pit to Madison Granite Company for the sum of FOUR HUNDRED THOUSAND AND NO/100 ($400,000.00) DOLLARS net to Fort McDowell Sand and Gravel.

The agreement was then signed by John Kirk, the president of Fort McDowell, and Stanley Novak Jr., apparently on behalf of his father Stan Novak, the managing partner of Defendant Madison Granite Company.

Defendants do not dispute that this agreement was in fact drafted. They contend, however, that this agreement was not in effect at the time of the auction on March 27, 1995. Defendants present several affidavits to support their argument that the agreement at the time of the March 27, 1995, auction was merely a proposal drafted by Fort McDowell's attorney, Tom McCarville. Defendants claim that Stan Novak's son, Stanley Novak, did not sign the agreement until March 28, 1995, a day after the auction had already taken place. John Kirk then executed the agreement approximately two weeks later after approval of the Board of Fort McDowell. Defendants further aver that Madison Granite never told Fort McDowell it would abstain from bidding at the auction, although it had decided earlier that it would not bid due to the environmental problems. In addition, no joint venture was ever formed under the terms of the agreement, and Defendants elected not to exercise their $400,-000 purchase option.

## III. STANDARD ON MOTION FOR SUMMARY JUDGMENT

The party seeking summary judgment has the burden of showing there are no genuine issues of material fact and that therefore he is entitled to judgment as a matter of law. *In re Circle K Corp.,* 190 B.R. 370, 372 (9th Cir. BAP 1995). Once movant has made a showing sufficient to meet his initial burden showing the absence of a disputed issue of material fact, the burden shifts to the party opposing summary judgment to show significant probative evidence tending to support its claim. *In re Aubrey,* 111 B.R. 268, 272 (9th Cir. BAP 1990).

## IV. DISCUSSION

### A. Collusive Bidding Under § 363(n)

■ Trustee argues that under § 363(n) he is entitled to void the sale of the property "if the sale price was controlled by an agreement among potential bidders at such sale, or ... recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated." In addition, he claims he may also recover costs, attorneys' fees and punitive damages. Section 363(n), however, requires that several things occur before the Trustee can either void the sale or seek damages: (1) there must be an agreement; (2) between potential bidders; (3) that controlled the price at bidding. Courts have

further interpreted this section to mean that the parties must have intended the agreement to actually control the price, and not merely affect the price. *See Lone Star Indus., Inc. v. Compania Naviera Perez Companc, Sudacia,* 42 F.3d 747, 752 (2d Cir. 1994); *see also Landscape Properties, Inc. v. Vogel,* 46 F.3d 1416, 1426 (8th Cir.1995).

The first question, therefore, is whether there was an agreement in effect at the time of the sale. Upon this, the parties do not agree. The agreement itself states that it "is made and entered into this 27th day of March, 1995." Defendants claim that they did not in fact sign the agreement on this date, and that therefore there was no agreement in effect at the time of the auction that could have controlled the bid. Through affidavits, Defendants state that Stanley Novak did not sign the agreement until sometime on or after March 28, 1995, and that John Kirk of Fort McDowell did not execute the agreement until at least two weeks later. Trustee argues that this extrinsic evidence is inadmissible under the parol evidence rule, and that the four corners of the document control, unequivocally showing that the agreement was in effect on March 27, 1995, the date of the sale. This Court disagrees.

■ Trustee is correct that where a contract is not reasonably susceptible to the interpretation offered by a party to the contract, an Arizona court will not allow that party to introduce extrinsic evidence contradicting the written language. *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). The situation here, however, does not involve the interpretation of a contract or a question of the parties' intent with respect to the date of the agreement. Rather, the issue here involves what may more accurately be termed a procedural matter surrounding the date of the agreement's execution—what courts have termed recitals or acknowledgments of existing facts. The date of execution in this case would not vary or contradict the meaning of the written *terms* in the agreement.

While no Arizona court has addressed this precise issue, the Arizona Supreme Court has acknowledged the difference between allowing in evidence that does not alter the promises and intent of the parties and that which does. In *Loganbill v. Zook,* the court allowed in extrinsic evidence to prove the true consideration for the sale of a piece of land.

> "It is a well established rule that the true consideration of a deed of conveyance may always be inquired into, and shown by parol evidence, for the obvious reason that a change in or contradiction of the expressed consideration does not affect in any manner the covenants of the grantor or grantee...."

38 Ariz. 540, 544, 3 P.2d 273 (1931) (citing 22 C.J. 1161, § 1557). The court further quoted a Wisconsin court as follows:

> "In antithesis to such expressions of that which either party promises are those mere declarations, recitals, or acknowledgments of existing facts, not contractual at all. These, while perhaps prima facie evidence of such facts, are not conclusive, nor exclusive.... To that end, however, the correctness of the recital was and is wholly immaterial, and the authorities, practically without exception, recognize that it binds no one as to its correctness, but may be proved, aliunde, to have been greater or less or different in character...."

*Id.* at 545, 3 P.2d 273 (citing *Jost v. Wolf,* 130 Wis. 37, 110 N.W. 232, 234 (1906)).

■ This is entirely consistent with the current Restatement (Second) of Contracts, which Arizona expressly follows: "A recital of a fact in an integrated agreement may be shown to be untrue." § 218(1) (1979). Comment b states, "[a] recital of fact in an integrated agreement is evidence of the fact, and its weight depends on the circumstances. Contrary facts may be proved. The result may be that the integrated agreement is not binding, or that it has a different effect from the effect if the recital had been true." This is the approach a majority of jurisdictions take in situations as the one before this Court. Where the date of the agreement is not a vital part of the contract, parol evidence is admissible to prove the date of the agreement. *Compare J.R. Fulton v. L & N Consultants, Inc.,* 715 F.2d 1413, 1418 n. 4 (10th Cir.1982); *Norden v. Friedman,* 756

S.W.2d 158, 163 (Mo.1988); *Meadors v. Pacific International Petroleum, Inc.*, 449 So.2d 26, 29 (La.Ct.App.1984); and *International Harvester Credit Corp. v. Pefley*, 458 N.E.2d 257, 261 (Ind.Ct.App.1983) *with Vermont Investment Capital, Inc. v. Granite Mutual Ins. Co.*, 705 F.Supp. 1019, 1021 (D.C.Vt., 1989) (extrinsic evidence regarding effective date and time of insurance policy inadmissible where such date is not simply a recital of fact but a material term of the policy); *Grand Junction Gospel Tabernacle v. Orvis*, 113 Colo. 408, 157 P.2d 619, 620 (1945) (extrinsic evidence regarding date of contract inadmissible where date of contract fixes due date of indebtedness).

■ This Court disagrees with Trustee's characterization that the date of the agreement is "the very objective of the Agreement." This is not an agreement where the date of the agreement is necessary to determine the effectiveness of some other provision in the agreement or is expressly incorporated into the terms of the agreement. For example, as Trustee states himself, where a promissory note states that the amount loaned will be due two years from the date of the agreement, parol evidence would be inadmissible to vary the due date on a note. That is not the situation here.[1]

■ This Court's decision to allow in extrinsic evidence regarding the date of the

agreement, however, does not mean this Court agrees with Defendants that there was no agreement in effect on the date of the sale. As stated above, this Court will grant summary judgment only when there is no material issue of fact. A material issue of fact remains as to whether the agreement was in effect at the time of the sale.

■ Defendants argue, however, that even assuming the agreement was in effect on the date of the sale, they are still entitled to summary judgment because there is no evidence that the agreement was intended to control the bid or did in fact control the bid. Defendants are correct that in order for there to be collusive bidding under § 363(n), the parties to the agreement must intend for the agreement to control the sale price and it must in fact actually control the sales price. *See Lone Star Industries, Inc. v. Compania Naviera Perez Companc (In re New York Trap Rock Corp.)*, 42 F.3d 747, 752 (2d Cir. 1994); *Ramsay v. Vogel*, 970 F.2d 471, 474 (8th Cir.1992). To support their argument, Defendants present affidavits of Bill Little, John Kirk, Thomas McCarville, Stan Novak, and Stanley Novak stating that no one ever intended to control the bidding price at the auction or ever discussed whether Madison Granite would abstain from bidding.

■ Notwithstanding this affidavit evidence, the agreement itself expressly states

---

1. Further, this Court is not persuaded that its decision should be any different under the analysis in *In re Re Reynaldo De Los Angeles*, 101 B.R. 722 (Bkrtcy. E.D.Okl.1989), on which Trustee relies. In *Reynaldo*, the Oklahoma bankruptcy court refused to allow in extrinsic evidence regarding the date of execution of an Assignment of Title. Debtor and the secured creditor joined forces to present extrinsic evidence to the court that the date on the Assignment of Title was not the actual date the assignment was executed. This evidence could impact whether the agreement was in effect at the time the petition was filed and therefore whether the real estate was property of the estate. The court focused on its right, as the trier of fact, " 'to disregard testimony of any witness when he is satisfied that the witness is not telling the truth or that the witness' testimony is inherently improbable due to its inaccuracy, uncertainty or interest or bias.' " 101 B.R. at 725. Based on this standard, the court considered the extrinsic evidence creditor was offering and concluded that debtor's affidavit could not be relied upon because of his bias in

seeing that the property was not property of the estate. "We find the documents made contemporaneous with the transaction to be the best evidence of said transaction and to be the more accurate representation of the fact. In addition, we find that the inherent dangers of fraud and other hindsight misrepresentations set forth in any parole evidence offered by the Debtor in derogation of the written documents created contemporaneously with the agreement are too great to allow." *Id.* at 724. The court further found that the secured creditor had not provided the court with evidence of sufficient weight and quality for the court to allow in the parole evidence offered, suggesting that it may have allowed such evidence if the court had found it sufficiently persuasive and unbiased.

This Court does not find similar questions of uncertainty, improbability, inaccuracy, or bias in this case. The evidence Defendants present is sufficiently persuasive and of sufficient weight and quality to protect against the inherent dangers of fraud found in admitting parol evidence.

that Madison Granite will not enter a bid at the sale, that Fort McDowell will bid $275,-000, and that Madison Granite has the option to purchase the property for $125,000 more than the bid price if the parties are unable to form a joint venture after the sale. This conflict sufficiently presents a question of material fact to preclude summary judgment. Further, there is evidence that Defendants bid $585,000 at the prior auction after discovering the environmental problems—roughly $300,000 more than what the property was ultimately sold for a little less than a year later—adding weight to Trustee's collusive bidding allegations. As a procedural matter, moreover, courts are reluctant to grant summary judgment where questions of *intent* exist. *See Steckl v. Motorola Inc.*, 703 F.2d 392, 393 (9th Cir.1983); *Douglas v. Anderson*, 656 F.2d 528, 535 (9th Cir.1981).[2]

Therefore, this Court denies both parties' summary judgment motions with respect to liability arising under § 363(n) and defers any decision on damages. The only remaining issue is Defendants' motion for summary judgment on the issue of the personal liability of Defendant Stan Novak.

### B. Personal Liability of Defendant Stan Novak

■ Defendants argue that Stan Novak, founder and general manager of Madison Granite, cannot be held personally liable for any damages that may result if this Court finds that Defendants engaged in collusive bidding. This Court agrees. Arizona law is well settled that courts will not disregard the corporate fiction and impose liability on the corporation's officers, directors, and shareholders unless the corporation is simply the alter ego of such officer, director, or shareholder. *Bischofshausen, Vasbinder, and*

*Luckie v. D.W. Jaquays Mining and Equipment Contractors Co.*, 145 Ariz. 204, 208, 700 P.2d 902, 906 (App.1985). To prove that Madison Granite is simply the alter ego of Stan Novak, or to pierce the corporate veil, Trustee must establish that there is such a unity of interest and ownership between Stan Novak and Madison Granite that the separate personalities of him and the corporation cease to exist. *Bischofshausen*, 145 Ariz. at 208, 700 P.2d at 906. For example, courts may pierce the corporate veil where it is shown that corporate formalities were ignored, the corporation was substantially undercapitalized, and there was impermissible intermingling of corporate and personal funds. *See Chapman v. Field*, 124 Ariz. 100, 102, 602 P.2d 481, 483 (1979). Arizona also requires that fraud be shown in order to pierce the corporate veil. *Id.* at 103, 602 P.2d at 484; *see also In re Nash*, 60 B.R. 27, 29 (9th Cir. BAP 1986).

■ Trustee argues that he need not pierce the corporate veil in order to hold Stan Novak personally liable. He alleges that Stan Novak, on behalf of himself and his marital community, "was a party to a plan to violate § 363(n), and that he is therefore liable for his own conduct." This argument is merely an attempt to make an end run around the protections accorded shareholders, directors, and officers by the corporate form and is not supported by any credible evidence. Moreover, the language of the agreement is clear that the agreement was signed by a representative of Madison Granite in his capacity as a representative of the company and not in his individual capacity. Therefore, this Court grants Defendants' motion for summary judgment with respect to Stan Novak's personal liability and dismisses him personally from this case.[3]

---

**2.** This Court also disagrees with Defendants' statement that this case is the same as *Landscape Properties*. While somewhat factually similar, the procedural posture and issue in that case was nevertheless different from that here. In that case, a jury found, based on the evidence presented, that an agreement between Vogel and Downing did not control the sale price of the property. It was not a case decided on summary judgment. In fact, when the court was asked to direct a verdict in favor of the Trustee earlier in the case, it refused on the ground that there was

sufficient evidence to permit a jury to find that the agreement did not control the sales price of the property. In a similar vein, this Court at this time is unable to grant summary judgment in favor of either party on the ground that there is sufficient evidence on each side raising a genuine issue of material fact.

**3.** The same holds true for any allegations that Stan Novak's son, Stanley Novak, should be held personally liable.

948

## IV. CONCLUSION

For the foregoing reasons, this Court denies Trustee's motion for summary judgment and Defendants' cross motion for summary judgment on the issue of collusive bidding under § 363(n). This Court grants summary judgment to Stan Novak. Counsel for Defendants is to submit a form of order.

The docket does not reflect that an answer has been filed by Defendant Madison. The Court will require an answer to be filed no later that twenty days from the date of this Order. Thereafter, a Rule 7016(b) scheduling conference will be held on Wednesday, April 15, 1998, at 11:00 a.m., Courtroom 6. The parties are to make their Rule 7026(a) disclosures and have their Rule 7026(f) meeting prior to the scheduling conference to allow trial to be set at that time.

So ordered.